[Cite as *State v. Jennings*, 2026-Ohio-2887.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
RICHLAND COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025 CA 0091 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Richland County Court of Common Pleas, Criminal Division, Case No. 2025-CR-0229N |
| JACKIE C. JENNINGS, | |
| Defendant - Appellant | Judgment: Affirmed |
| | Date of Judgment Entry: July 27, 2026 |

**BEFORE:** William B. Hoffman; Robert G. Montgomery; Kevin W. Popham, Judges

**APPEARANCES:** JODIE M. SCHUMACHER, Prosecuting Attorney for Richland County, Ohio, by MICHELLE FINK, for Plaintiff-Appellee; RANDALL FRY, for Defendant-Appellant.

*Montgomery, J.*

{¶1} Defendant-Appellant, Jackie Jennings, ("Appellant") appeals from the judgment of the Richland County Court of Common Pleas finding her guilty, after a jury trial, of robbery, trespass, and misdemeanor theft. The trial court sentenced her to 36 months in prison. For the reasons below, we AFFIRM.

**STATEMENT OF THE FACTS**

{¶2}    In May of 2023, the 61-year-old victim, TK, was living in a house located at 1098 Marianna Drive, in Richland County, Ohio.  TK's nephew, Travieso ("Travis") Osorio-James and his girlfriend, Tara ("Tara") McGuire, were living in TK's basement and had been doing so for about nine months.  According to TK's testimony, during the evening hours of May 22, 2023, TK laid down in her bedroom because she wasn't feeling well when her bedroom door opened and she saw a flash of light, like from a phone.  TK saw a female, later identified as Appellant, walk out into her hallway.  TK rose from her bed and followed her towards the living room.  TK saw Appellant pick up TK's phone and exit through the home's front door.

{¶3}    TK followed Appellant outside.  TK saw a black SUV waiting outside, with another female in it, and saw Appellant walk over to the car and toss TK's phone into it.  Appellant turned around and came back towards TK.  TK asked her "what are you doing?"  Appellant replied that she was going back in the home because her sister was in there.  TK tried to stop Appellant from going back inside.  Appellant, who was wearing a hoodie with front pockets, started pushing TK towards the house trying to reenter TK's home.  TK was trying to hold her back, but Appellant pushed TK into the front door, kept pushing TK and ultimately pushed TK into the refrigerator.  TK experienced pain in her back from this altercation and was later transported to the hospital.

{¶4}    Appellant went towards the other female in the kitchen, whom Appellant referred to as her sister, who was arguing with Travis and Tara.[1]  The argument concerned

---

[1] So, all together, there were three females involved.  Appellant, the driver waiting in the SUV, and the female in the house with Appellant confronting Tara in the kitchen.

Tara's use of Appellant's food stamp card that Appellant loaned Tara. At some point, Appellant told TK to control her dog or she was going to shoot it. TK never saw a gun but complied with Appellant's request. Eventually, Appellant and the other female left in the black SUV. TK called 911 using Tara's phone. When law enforcement arrived, they requested an ambulance for TK due to her back pain. At trial, TK identified Appellant as the one who entered her home and took her phone; however, TK could not identify Appellant in the police photo lineup. The testimony indicated that Appellant changed her hair style frequently.

{¶5} Travis also testified for the State. He testified that at some point during the evening hours, he heard people arguing and screaming upstairs. When he and Tara went upstairs from the basement, Appellant was waiting at the door with another female. Appellant and Tara began arguing. Travis had no idea what the problem was at the time. Eventually Appellant and the other female exited the house. Travis knew Appellant because she was friends with Tara, but he did not know the other female who came to the residence with Appellant. Travis later identified Appellant in a police photo lineup as one of the women who entered TK's home. Travis also identified Appellant positively at trial.

{¶6} The State also called two Richland County police officers, Deputy Nicholas Petursson and Detective Scott Davis. Deputy Petursson took the initial report on the night in question. He testified he arrived at TK's home around 10:00 pm. His report stated that TK heard knocking at the front door and TK looked outside and saw three women. TK opened the door, and at some point, the women shoved TK into a brick area of the residence and Appellant entered TK's home. Detective Davis testified that he recalled TK stating she was in bed, and TK did not know how the women gained access into her home, a discrepancy

from Deputy Petursson's report.  However, defense counsel exposed this discrepancy through cross-examination.

{¶7}    Appellant also testified on her own behalf.  Appellant testified she was friendly with Tara prior to this incident and had purchased food to help out Tara and Travis.  At some point, Appellant believed that Tara stole Appellant's food card but claimed that she was not involved whatsoever in the incident at TK's home on the night in question.  Appellant denied ever going to TK's home.  After presentation of all the evidence, the jury deliberated and ultimately returned a guilty verdict for all charges.  Appellant timely filed the instant appeal.

## STATEMENT OF THE CASE

{¶8}    On March 21, 2025, Appellant was indicted for robbery, a violation of R.C. 2911.02(A)(3), a felony of the third degree; trespass in a habitation when a person is present or is likely to be present, a violation of R.C. 2911.12(B), a felony of the fourth degree; and misdemeanor theft, a violation of R.C. 2913.02(A)(1), a misdemeanor of the first degree. On April 9, 2025, Appellant pled not guilty.  The jury trial was held on August 19, 20, 21, and 22, 2025.   The jury found Appellant guilty as charged. The trial court sentenced Appellant on Count 1, robbery, to a prison term of 36 months. As to Count 2, trespass, the trial court imposed a prison term of 12 months, to be served concurrently with Count 1. The trial court merged the misdemeanor theft count with Count 1 for purposes of sentencing.  Thus, Appellant was sentenced to a total of 36 months in prison.  The trial court also imposed court costs and ordered Appellant to make restitution in the amount of $125 for the victim's cell phone, which was never recovered.

## ASSIGNMENTS OF ERROR

{¶9}    "I.  THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S OBJECTION TO THE JURY INSTRUCTION."

{¶10} "II. THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S MOTION FOR CONTINUANCE."

{¶11} "III. THE EVIDENCE IN THIS CASE WAS INSUFFICIAN [SIC] AS A MATTER OF LAW TO SUPPORT A CONVICTION OF THE CHARGES IN THE INDICTMENT AND AS A RESULT, THE APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE 1, SECTION SIXTEEN OF THE OHIO CONSTITUTION AND THE 5TH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED."

## ANALYSIS

### 1) *Jury Instruction*

{¶12} In her first assignment of error, Appellant claims the trial court erred in overruling counsel's objection to the jury instruction regarding her role as an aider and abettor. Appellant claims that because she was indicted as a principal offender, the additional instruction for aiding and abetting was improper. We disagree.

{¶13} As an initial matter, the burden is upon Appellant to affirmatively demonstrate error on appeal. App.R. 16(A)(7); *State v. Sims,* 2016-Ohio-4763 (10th Dist.). "It is the duty of the appellant, not this court, to demonstrate [her] assigned error through an argument that is supported by citations to legal authority and facts in the record." *State v. Humphries*, 2008-Ohio-388, ¶ 47, quoting *State v. Taylor* 1999 Ohio App. LEXIS 397, *9 (9th Dist.); see also, App.R. 16(A)(7). "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Id*., citing *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (1996).

{¶14} In support of the first assignment of error, Appellant argues this "charge prejudiced the Appellant, especially when the identity of the person is said to have aided and abetted is unknown. The Appellant's trial attorney prepared his case as if the Appellant was the principal offender. The Appellant had no opportunity to cross examine the person the

Appellant has said to have aided and abetted." Appellant's Brief, p. 8. Although Appellant makes this brief argument, there are no references to legal authority to support it and the only reference to the record is to trial counsel's objection. It is not this court's job to craft Appellant's assignment of error. As Appellant's argument fails to comply with appellate rule requirements, she has failed to meet her burden on appeal and the assignment of error fails.

{¶15} Even considering Appellant's first assignment of error, we conclude the jury instruction was proper. Jury instructions must be reviewed as a whole, meaning in totality with all of the instructions given. *State v. Coleman*, 37 Ohio St.3d 286 (1988). The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Moore,* 2021-Ohio-287, ¶ 19 (5th Dist.). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

{¶16} Complicity is set forth in R.C. 2923.03. Pursuant to R.C. 2923.03(A)(2), a person is guilty as an accomplice, rather than as a principal offender, if he aids or abets another in committing the offense while acting with the level of culpability required for committing the offense. In turn, pursuant to R.C. 2923.03(F):

> (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

{¶17} A "complicity instruction is proper if 'the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor[.]'" *State v.*

*Simpson,* 2013-Ohio-4276, ¶ 33 (9th Dist.), quoting *State v. Penyman,* 49 Ohio St.2d 14 (1976), paragraph five of the syllabus; *State v. Crosby*, 2016-Ohio-571 (5th Dist.) (finding the jury instruction on complicity proper as there was sufficient evidence to establish complicity despite the state's theory of the case that appellant was the shooter, meaning the principal offender).

{¶18} Here, based on the State's evidence, the jury could reasonably conclude that even if Appellant was not the principal offender, she nonetheless assisted the other female in the commission of the offenses inside TK's home. TK and Travis identified Appellant as being present with the other female in TK's home, TK identified Appellant as entering her home and as the one pushing her back into her home, Appellant and the other woman were both seen arguing in the kitchen with Tara, and they both left the home together – all while a third woman was waiting outside in a vehicle. Without question, the evidence demonstrates that Appellant was involved. The trial court did not abuse its discretion in giving a complicity instruction. Thus, Appellant's first assignment of error is overruled.

### 2) *Denial of Motion to Continue*

{¶19} In the second assignment of error, Appellant claims the trial court improperly denied her requested continuance on the day of trial. Appellant requested the continuance because on the night before trial, a woman, Kerri Lanier, called Appellant's attorney and told the attorney she was the one who went to the victim's home. The trial court denied the motion and found the woman not credible, although the court did allow a proffer of her testimony.

{¶20} The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there was an abuse of discretion. *Ungar* v. *Sarafite* (1964), 376 U.S. 575,

589; *State v. Unger,* 67 Ohio St.2d 65, 67 (1981); *State v. Olsen,* 2024-Ohio-5671, ¶ 19 (5th Dist.). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶21} In determining whether a trial court abused its discretion in denying continuance, courts consider several factors, including the length of the requested delay, prior continuances, inconvenience to the court and parties, the legitimacy of the reason for the request, and whether the defendant contributed to the circumstances necessitating the continuance. *Unger,* at 67-68; *State v. Olsen,* 2024-Ohio-5671, ¶ 20 (5th Dist.).

{¶22} First, Appellant filed and received two previous continuances of the jury trial. Second, counsel made the oral request the day that trial was again set to begin. Third, Appellant argued that the information provided by Kerri Lanier was new; however, Lanier's proffered testimony demonstrates that over a month prior to the trial she went to Appellant's home, told Appellant that Lanier overheard someone say they were the individual who committed the crimes, and provided Appellant the name of the person Lanier claims to have heard make the statement. In the conversation related by Lanier, when she gave the name of the person who made the statement, Appellant "said that they were friends like sisters." Tr. Vol. II, p. 42. Appellant did not share any of this information with defense counsel. In denying the motion for continuance, the court stated:

Miss Lanier * * * indicated that it was reported to the Defendant, Miss Jennings, more than five weeks ago, approximately five weeks ago, and that information was not brought to your attention by your client, which would be pertinent in the Court's eyes. If it was believable, if there was any shred of

actuality to it, if your client believed this and if this was really the case, your client would have brought that to your attention. At this point, the Court is going to find that that information was with your client and your client didn't divulge it to you.

Tr. Vol. II, pp. 52-53.

**{¶23}** Fourth, even if it were true that the individual named by Lanier committed the crimes as principal offender, Appellant remains criminally liable for her actions as an aider and abettor. Thus, there is simply no basis to find that the trial court acted arbitrarily, unreasonably, or unconscionably in any way in denying the request on the day of trial for information known to Appellant for more than a month. Appellant's second assignment of error is overruled.

### 3)    *Sufficiency of the Evidence*

**{¶24}** In the third assignment of error, Appellant argues the evidence is insufficient as a matter of law, and therefore, the convictions violated Appellant's constitutional rights. Again, we disagree. The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4; *State v. Worley,* 2021-Ohio-2207, ¶57. A sufficiency-of-the-evidence challenge asks whether the evidence is "legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 2011-Ohio-

4215, ¶ 219. When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *Jenks*, at 102.[2]

{¶25} Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" (Emphasis and brackets sic.) *State v. Walker,* 2016-Ohio-8295, ¶ 31, citing *State v. Murphy*, 2001-Ohio-112, quoting *Jenks* at paragraph two of the syllabus. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson,* 2016-Ohio-8448, ¶ 13. Unlike a manifest weight challenge, where reversal requires a new trial, if an appellate court reverses a conviction on the basis that it is supported by insufficient evidence, the Double Jeopardy Clause bars retrial. *Burks v. United States*, 437 U.S. 1, 11 (1978); *State v. Brewer*, 2009-Ohio-593, ¶ 15.

{¶26} Appellant focuses on TK's inability to identify Appellant in the police photo lineup and TK's initial physical description of Appellant, stating she weighed 200-300 pounds, when TK called 9-1-1. Appellant's argument ignores the additional substantial evidence demonstrating Appellant's involvement. TK testified she got a good look at the person who entered her bedroom, stood in her kitchen, and took her phone. Indeed, Appellant got a good look because she followed Appellant outside, and when Appellant came back towards TK to re-enter the home, Appellant began pushing TK - ultimately into the refrigerator and then went into the kitchen. That person was Appellant. TK then observed the individuals, including Appellant, arguing in the kitchen. TK had ample opportunity during the entirety

---

[2] It is important to note that Appellant does not assert that the conviction is against the manifest weight of the evidence.

of events to see Appellant and properly identify her, irrespective of the fact that she could not pick her out of a photo lineup.

{¶27} Travis, who knew Appellant before the day in question, also identified Appellant by name to law enforcement on the night in question. Travis positively identified Appellant in a photo lineup days after the crimes and testified at trial that Appellant was in fact one of the women in TK's home. Indeed, it was Appellant's food stamp card that caused the argument with Tara, apparently causing these women to come to TK's home in the first place. Defense counsel thoroughly cross-examined the State's witnesses and argued on behalf of Appellant. Appellant's defense simply denied that she was at TK's home on the night in question.

{¶28} The credibility of witnesses and the resolution of conflicting evidence are matters for the finder of fact to resolve. The jury was free to accept or reject any and all of the evidence offered and assess the credibility of the witnesses. *Walker,* ¶ 31. Here, the jury heard the testimony, including Appellant's own testimony, and chose to believe the State's witnesses over Appellant. After examining the State's evidence, we conclude it is sufficient to prove the elements of the charged offenses and that a rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt.

{¶29} To the extent that Appellant attempts to assert a "manifest weight" challenge, that argument similarly fails. Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Williams*, 2003-Ohio-4396, ¶ 83. When a court of appeals reverses a judgment of a trial court as against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees

with the fact finder's resolution of conflicting testimony. *State v. Jordan*, 2023-Ohio-3800; *Thompkins*, at 387; *Williams,* ¶ 60.

{¶30}   The reviewing court must determine whether the jury clearly "lost its way and created such a manifest miscarriage of justice" that the conviction cannot stand, and a new trial must be ordered. *Id.*, quoting *State v. Group*, 2002-Ohio-7247, ¶ 77 (citations omitted). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *State v. Dotson*, 2017-Ohio-5565, ¶ 1 (5th Dist.).  Here, the jury did not clearly lose its way in finding Appellant guilty as charged.  As set forth above, the jury properly considered the conflicting testimony and resolved it against Appellant.  Appellant's third assignment of error is overruled.

## CONCLUSION

{¶31} Appellant's first, second, and third assignments of error are overruled in their entirety. The judgment of the Richland County Court of Common Pleas, Criminal Division, is affirmed.

{¶32} Costs to Appellant.

By: Montgomery, J.

Hoffman, P.J. and

Popham, J. concur.